SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
RONALD J. HOLLAND, Cal. Bar No. 148687
MORGAN P. FORSEY, Cal. Bar No. 241207
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone: 415.434.9100
Facsimile: 415.434.3947
Email:    mforsey@sheppardmullin.com
          rholland@sheppardmullin.com

Attorneys for WASTE MANAGEMENT NATIONAL SERVICES, INC., WASTE MANAGEMENT OF CALIFORNIA, INC., and WASTE MANAGEMENT OF ALAMEDA COUNTY, INC.

FILED
MAR 28 2013
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EDL

| | |
|---|---|
| TEODORA VELAZQUEZ, PHILLIP PERRY, PAUL BLUM, OSCAR LARGEASPADA, MARK MARIANI, KARLTON PRATER, EDDIE HITCHCOCK, CHARLES MARTIN, CARL YATES, ANTONIO VICTORIA, ANTONION INGRAM, ALAN MANRIQUE, JOYCE GUZMAN, and THOMAS HOOVER, all individuals,<br><br>Plaintiffs,<br><br>v.<br><br>WASTE MANAGEMENT NATIONAL SERVICES, INC., WASTE MANAGEMENT OF CALIFORNIA, INC., WASTE MANAGEMENT OF ALAMEDA COUNTY, INC., and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 13 1404<br><br>**DEFENDANTS' NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1331, 1441 (a), (b), AND (c), 1446(a),(b) AND (d)**<br><br>*[Filed concurrently with the Declarations of Jean Logan and Morgan P. Forsey]*<br><br>[Complaint Filed: November 19, 2012]<br><br>Trial Date: None Set |

-1-

SMRH:408213243.1                                                              NOTICE OF REMOVAL

1  TO THE CLERK OF THE COURT OF THE NORTHERN DISTRICT OF
2  CALIFORNIA:

3

4     PLEASE TAKE NOTICE that Defendants WASTE MANAGEMENT
5  NATIONAL SERVICES, INC., WASTE MANAGEMENT OF CALIFORNIA,
6  INC., and WASTE MANAGEMENT OF ALAMEDA COUNTY, INC. hereby
7  remove the action entitled: <u>Teodora Velazquez, et al. v. Waste Management
8  National Services, Inc., Waste Management of California, Inc., Waste Management
9  of Alameda County, Inc., and Does 1-50</u>, Alameda County Superior Court Case No.
10 RG12656770 (the "State Court Action"). The removal is based on the existence of a
11 federal question, as Plaintiffs' claims are brought under a federal statute (29 U.S.C.
12 § 2615), and are also substantially dependent on the interpretation of two collective
13 bargaining agreements and, as such, are preempted under Section 301 of the Labor
14 Management Relations Act. <u>See</u> 28 U.S.C. §§ 1331, 1441(a), (b) and (c).

15

16    In support of this removal Defendants state the following:

17

18 A.   **INTRADISTRICT ASSIGNMENT**

19

20    Assignment to either the San Francisco or Oakland Division of this
21 Court is proper as the State Court Action was pending in Alameda County Superior
22 Court. <u>See</u> Civil L.R. 3-2(d).

23

24 B.   **THE PLEADINGS**

25

26    **The Complaint**: On November 19, 2012, Plaintiffs Teodora
27 Velazquez, Phillip Perry, Paul Blum [sic], Oscar Largeaspada, Mark Mariani,
28 Karlton Prater, Eddie Hitchcock, Charles Martin, Carl Yates, Antonio Victoria,

-2-

Antonion Ingram, Alan Manrique, Joyce Guzman, and Thomas Hoover ("Plaintiffs") filed a Complaint in the Superior Court of California, County of Alameda, entitled: <u>Teodora Velazquez, et al. v. Waste Management National Services, Inc., Waste Management of California, Inc., Waste Management of Alameda County, Inc., and Does 1-50</u>. In the Complaint, Plaintiffs allege the following seven causes of action: (1) Violation of the Family and Medical Leave Act – Interference With Exercise of Rights; (2) Violation of the Family and Medical Leave Act – Retaliation; (3) Violation of the Family and Medical Leave Act – Interference With Proceedings; (4) Retaliation Under California Government Code Section 12940; (5) Disparate Treatment – Sexual Harassment; (6) Hostile Work Environment; and (7) Intentional Infliction of Emotional Distress. Defendants were served with the Summons and Complaint on February 27, 2013. Attached as **Exhibit 1** is a copy of the Complaint and, as required by 28 U.S.C. § 1446(a), copies of all papers served upon Defendants in this action. See the Declaration of Morgan Forsey ("Forsey Decl.") ¶ 3, Ex. 1.

**The Response Deadline**: Defendants' deadline to respond to the Complaint is March 29, 2013. Other than the Complaint, no further pleadings have been filed in the State Court Action. See Forsey Decl. ¶ 3.

C.  **JURISDICTION**

**Timeliness**: Plaintiffs served all three Defendants with the Summons and Complaint by personal delivery on their registered agent for service of process on February 27, 2013. See Forsey Decl. ¶ 3, Ex. 2. Defendants' Notice of Removal is timely because Defendants filed it within thirty days of service of the Complaint. See 28 U.S.C. § 1446(b).

**Federal Question Jurisdiction**: This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, and removal is proper under 29 U.S.C. § 1441(b), in that:

a. Plaintiffs' claims require substantial interpretation of a collective bargaining agreement ("CBA") between an employer and a union. Therefore, the action is entirely preempted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.

b. At all relevant times alleged in the Complaint, Defendant Waste Management of Alameda County, Inc. ("WMAC") has been, and is, a company engaged in commerce and in an industry affecting commerce within the meaning of Sections 2(2), 2(6), and 2(7) of the NLRA and Section 301(a) of the LMRA, 29 U.S.C. §§ 152(2), (6), (7) and 185(a). See Declaration of Jean Logan ("Logan Decl.") ¶¶ 8 and 14.

c. At all relevant times alleged in the Complaint, WMAC was a party to a collective bargaining agreement ("CBA") with the International Brotherhood of Teamsters, Local 70 ("Local 70"). See Logan Decl. ¶¶ 5 and 6. A copy of the CBA between Local 70 and WMAC, is attached as **Exhibit A** to the Logan Decl. ¶ 6.

d. At all relevant times alleged in the Complaint, Plaintiffs Brum, Guzman, Hitchcock, Ingram, Largeaspada, Manrique, Mariani, Perry, Prater, Victoria, and Yates were all employed by WMAC, and were members of the Local 70. During the relevant time

period, the terms and conditions of their employment were governed by the CBA between WMAC and Local 70. See Logan Decl. ¶¶ 3, 5 and 6.

   e.   Local 70 is a labor organization in which certain employees of WMAC participate and which exists for the purpose of dealing with employees concerning grievances, labor disputes, wages, rates of pay, hours of employment, and conditions of work. See Logan Decl. ¶ 7. At all relevant times, Local 70 has been, and is, a labor organization within the meaning of Section 2(5) of the National Labor Relations Act (NLRA) and 301(a) of the LMRA, 29 U.S.C. §§ 152(5) and 185(a). See Logan Decl. ¶¶ 7 and 8.

   f.   At all times relevant to this lawsuit, the Local 70 CBA governed the terms and conditions of employment between Brum, Guzman, Hitchcock, Ingram, Largeaspada, Manrique, Mariani, Perry, Prater, Victoria, and Yates with WMAC. Those terms include, but are not limited to: seniority and seniority rights, bidding for open positions, filling positions, job duties, resolution of route disputes, hours of work (including start times for each job position and overtime), rates of pay, leaves of absence, return to work after leaves of absence, drug testing, safety, work jurisdiction, job assignments, grievance procedure, anti-discrimination and use of profane language and GPS technology. See Logan Decl. ¶¶ 3, 5 and 6, **Ex. A**.

   g.   At all relevant times alleged in the Complaint, WMAC was a party to a CBA with Local Warehouse Union Local 6 ("Local

6"). See Logan Decl. ¶¶ 10 and 11. A copy of the CBA between Local and WMAC, is attached as **Exhibit B** to the Logan Decl. ¶ 11.

    h.    The Local 6 CBA expired on January 25, 2011. Id. ¶12. However, on January 28, 2011, WMAC and Local 6 entered into a written agreement extending all provisions of the CBA while the parties negotiate the terms and conditions of a successor contract. As of March 28, 2013, the extension is still in place and the Local CBA attached hereto as **Exhibit B** remains in force. Id.

    i.    At all relevant times alleged in the Complaint, Plaintiffs Hoover, Martin, and Velazquez were all employed by WMAC and were members of Local 6. During the relevant time period, the terms and conditions of their employment were governed by the CBA between WMAC and Local 6. See Logan Decl. ¶ 11.

    j.    The Local 6 CBA governed the terms and conditions of employment between Hoover, Martin, and Velazquez and WMAC. See Logan Decl. ¶ 11. Those terms include but are not limited to: seniority and seniority rights, bidding for open positions, filling positions, rates of pay, work jurisdiction, grievance procedure, and anti-discrimination. See Logan Decl. ¶13, **Ex. B**.

    k.    Local 6 is a labor organization in which certain employees of WMAC participate and which exists for the purpose of dealing

with employees concerning grievances, labor disputes, wages, rates of pay, hours of employment, and conditions of work. See Logan Decl. ¶¶ 13 and 14. At all relevant times, Local 6 has been, and is, a labor organization within the meaning of Section 2(5) of the National Labor Relations Act (NLRA) and 301(a) of the LMRA, 29 U.S.C. §§ 152(5) and 185(a). Id.

1. The Complaint alleges that Plaintiffs are all current and former employees of WMAC. They allege the following:

   (1) Plaintiff Hitchcock alleges that he was forced to work beyond 8 hours in a shift in violation of the "no mandatory overtime" provision in the CBA with Local 70. See Comp. ¶¶150-151. He further alleges that in 2010, he was not paid the correct hourly rate. Id. ¶161. The Local 70 CBA contains provisions regarding shift start times, hourly rates and overtime. See Logan Decl., **Ex. A**, Article 6 (Minimum Daily Rates), Sections 3 (Shift Premium), 5 (Hour of Work and Starting Times), 7 (Starting Times, Shifts and Meal Periods), 9 (Overtime) and 11 (Overtime for Garbage Collection Routes). Accordingly, Hitchcock's claims are "founded directly on rights created by collective bargaining agreements" and/or are substantially dependent on analysis and interpretation of a collective bargaining agreement. See Hayden v. Reickerd, 957 F.2d 1506, 1509 (9th Cir. 1991); see also Caterpillar Inc. v. Williams, 482 U.S. 386, 393 (1987). To adjudicate Hitchcock's claims, therefore, the Court will

necessarily need to interpret relevant provisions of the Local 70 CBA. As such, the claims which are asserted in the First, Second, Fourth, and Seventh Causes of Action are completely preempted by Section 301 of the LMRA.

(2) Plaintiff Largeaspada alleges that he was not paid a 10% premium hourly rate as provided for by Article 6, Sections 6.3 and 6.5 of the Local 70 CBA. See Comp. ¶¶130-131. Largeaspada also alleges that WMAC used falsified GPS data to show he was "stealing time." Id. ¶117 and 118. The Local 70 CBA contains provisions regarding premium hourly rates and the use of GPS technology. See Logan Decl., **Ex. A**, Article 6 (Minimum Daily Rates), Sections 3, 5, 7, 9 and 11 and Article 21 (General Provisions), Section 17 (GPS Evidence). Accordingly, Largeaspada's claims are "founded directly on rights created by collective bargaining agreements" and/or are substantially dependent on analysis and interpretation of a collective bargaining agreement. To adjudicate Largeaspada's claims, therefore, the Court will necessarily need to interpret relevant provisions of the Local 70 CBA. As such, the claims are completely preempted by Section 301 of the LMRA.

(3) Plaintiff Martin alleges that unlike his predecessor in his job position, he was not called in three hours early for three hours of overtime work. See Comp. ¶172 and 173. Martin further alleges that he was a member of Local 70, but was assigned to a task that was reserved for members

of Local 6. Id. ¶¶175 and 176. The Local 70 CBA governs overtime, covered positions and rules regarding job assignments. See L:ogan Decl., **Ex. A**, Article 6 (Minimum Daily Rates), Sections 3, 5, 7, 9 and 11 and Article 8 (Work Jurisdiction), and **Ex. B**, Sections 1 (Recognition), 2 (Seniority and Job Bidding), and 3 (Management Rights). Further, the Local 70 and Local 6 CBA's will have to be interpreted and compared to adjudicate Martin's claim that he was improperly assigned to work duties "reserved" for Local 6 members. Accordingly, Martin's claims are "founded directly on rights created by collective bargaining agreements" and/or are substantially dependent on analysis and interpretation of a collective bargaining agreement. To adjudicate Martin's claims, therefore, the Court will necessarily need to interpret relevant provisions of the Local 70 and Local 6 CBAs. As such, the claims are completely preempted by Section 301 of the LMRA.

(4) Plaintiff Victoria alleges that he was passed over for a Hosler position, even though he had seniority. See Comp. ¶¶202 and 203. He further alleges that he was passed over for a dispatcher position and then improperly removed from a back-up dispatcher position, in violation of the "bargained for practice of removal." Id. ¶¶205 and 207. The Local 70 CBA governs seniority, seniority rights, bidding and placement in open positions, and rules regarding job assignments. See Logan Decl., **Ex. A**,

-9-

Article 5 (Seniority and Layoffs), Sections 2 (Seniority), 3 (Application of Seniority), 7 (Filling Positions), 8 (Bidding), and 11 (Temporary Vacancies), and Article 6 (Minimum Daily Rates), Section 4 (Jobs) and Article 8 (Work Jurisdiction). Accordingly, Victoria's claims are "founded directly on rights created by collective bargaining agreements" and/or are substantially dependent on analysis and interpretation of a collective bargaining agreement. Thus, to adjudicate Victoria's claims, the Court will necessarily need to interpret relevant provisions of the Local 70 CBA. As such, the claims are completely preempted by Section 301 of the LMRA.

(5) Plaintiff Manrique alleges that he was improperly selected for a random drug test. See Comp. ¶¶66 and 67. The Local 70 CBA governs drug testing of Local 70 members, including random drug tests. See Logan Decl., **Ex. A**, Article 29 (Drug and Alcohol Testing). Accordingly, Manrique's claims are "founded directly on rights created by collective bargaining agreements" and/or are substantially dependent on analysis and interpretation of a collective bargaining agreement. See Hayden, 957 F. 2d at 1509; see also Caterpillar, Inc., 482 U.S. at 394. To adjudicate Manrique's claims, therefore, the Court will necessarily need to interpret relevant provisions of the Local 70 CBA. Thus, to adjudicate Manrique's claims, the Court will necessarily need to interpret relevant

provisions of the Local 70 CBA. As such, the claims are completely preempted by Section 301 of the LMRA.

(6) Plaintiff Yates alleges that the cruise control on the company-owned truck that he was assigned to drive was improperly disconnected after he was observed using it. See Comp. ¶191-192. The Local 70 CBA contains provisions regarding safety, and the safe use of equipment. See Logan Decl., **Ex. A**, Article 22 (Safety Regulations) and Appendix A, "Life Critical Rules," item 10 re vehicle safety features. Accordingly, Yates' claims are "founded directly on rights created by collective bargaining agreements" and/or are substantially dependent on analysis and interpretation of a collective bargaining agreement. Thus, to adjudicate Yates' claims, the Court will necessarily need to interpret relevant provisions of the Local 70 CBA. As such, the claims are completely preempted by Section 301 of the LMRA.

(7) Plaintiffs Prater and Ingram both allege that upon return to work after an extended medical leave, they were required to provide a doctor's note and/or complete a fitness for duty medical examination. See Comp. ¶¶219-221 and 224-226. Prater also alleges that he filed a grievance over the company's requirement that he perform his route twice a day (once to pick up garbage and again to pick up recycling separately). Id. 230. The Local 70 CBA governs leave, return from leave and rules regarding job

-11-

assignments. See Logan Decl., **Ex. A**, Article 6 (Minimum Daily Rate), Sections 4 and 8 (Return to Work), Article 17 (Leave of Absence), and Article 8 (Work Jurisdiction). Accordingly, Prater's and Ingram's claims are "founded directly on rights created by collective bargaining agreements" and/or are substantially dependent on analysis and interpretation of a collective bargaining agreement. Thus, to adjudicate their claims, the Court will necessarily need to interpret relevant provisions of the Local 70 CBA. As such, the claims are completely preempted by Section 301 of the LMRA.

(8) Plaintiff Perry alleges he was improperly disciplined based on two incidents of tardiness. See Comp. ¶95. The provisions of the Local 70 CBA cover absenteeism, tardiness and discipline. See Logan Decl., **Ex. A**, Article 16 (Absence and Tardiness Program). Accordingly, Perry's claims are "founded directly on rights created by collective bargaining agreements" and/or are substantially dependent on analysis and interpretation of a collective bargaining agreement. Thus, to adjudicate Perry's claims, the Court will necessarily need to interpret relevant provisions of the Local 70 CBA. As such, the claims are completely preempted by Section 301 of the LMRA.

(9) The Local 6 and Local 70 CBAs both contain provisions forbidding discrimination of any nature. Thus, to the extent Plaintiffs assert they were treated in a

-12-

discriminatory fashion, adjudicating those claims will require interpretation of the applicable CBA. See Logan Decl., **Ex. A**, Article 24 (Discrimination), and **Ex. B**, Section 11 (Discrimination).

m. While Plaintiffs allege that the above-described acts constitute, among other things, retaliation under California's Fair Employment and Housing Act ("FEHA"), courts have held that FEHA claims are preempted by the LMRA when they cannot be resolved without interpreting the express and implied terms of a CBA. Bachilla v. Pac. Bell Tel. Co., 2007 U.S. Dist. LEXIS 71232 (E.D. Cal. Sept. 25, 2007); see also Madison v. Motion Picture Set Painters & Sign Writers Local 729, 132 F. Supp. 2d 1244, 1253 (C.D. Cal. 2000) (where proof of plaintiff's prima facie case for race discrimination under FEHA would require interpretation of the CBA and where defendant's articulated non-discriminatory reasons for the action it took would almost certainly require interpretation of the CBA, claim was preempted by the LMRA); Audette v. Longshoremen's and Warehousemen's Union, 195 F. 3d 1107, 1113 (9th Cir. 1999).

n. Plaintiffs' claims are either based upon or preempted by federal law, specifically Section 301 of the Labor Management Relations Act ("Section 301"). 29 U.S.C. § 185. Under Section 301, "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in a district court for the United States having jurisdiction of the parties without regard to

-13-

the amount in controversy or without regard to the citizenship of the parties." Firestone v. Southern Calif. Gas Co., 219 F.3d 1063, 1065 (9th Cir. 2000).

  o. All state law claims raised by a union-represented employee that require interpretation of a collective bargaining agreement fall within Section 301. Allis-Chalmers Corp. v. Lueck, 571 U.S. 202, 211 (1985). "The preemptive force of Section 301 is so powerful that it displaces entirely any state cause of action for violation of a collective bargaining agreement…any state claim whose outcome depends on analysis of the terms of the agreement." Newberry v. Pac. Racing Ass'n, 854 F.2d 1142, 1146 (9th Cir. 1988); see also Voorhees v. Naper Aero Club, Inc., 272 F.3d 398, 403 (7th Cir. 2001) (noting that Section 301 is one of "only two areas in which the Supreme Court has found that Congress intended completely to replace state law with federal law for purposes of federal jurisdiction").

  p. Section 301 has specifically been held to preempt California state law claims that are substantially dependent upon interpretation of a collective bargaining agreement. Firestone, 219 F.3d at 1066-67 (claim preempted by Section 301 where the CBA had to be interpreted to resolve the plaintiff's wage claims). This remains true even where interpretation was required to evaluate the employer's defense to a plaintiff's state law cause of action. See Audette, 195 F.3d at 1113 (9th Cir. 1999) (civil rights claim preempted where interpretation of agreement required in evaluating employer's defense that it had a legitimate

non-retaliatory business reason for its action); see also Levy v. Skywalker Sound, 108 Cal. App. 4th 753, 769 (2003) (claim for unpaid wages preempted because it "rest[ed] entirely" on a claim that plaintiff was "entitled . . . to wages at the level set by the CBA").

q. Adjudicating Plaintiffs' First, Second, Third, Fourth and Seventh Causes of Action will require significant interpretation of at least **six** Articles and at least **17** Sections of the Local 70 CBA, and at least **three** Sections of the Local 6 CBA. Thus, Section 301 preempts these causes of action. See, e.g., Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399, 405-406 (1988) ("if the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law . . . is pre-empted"). Therefore, these causes of action also cannot be adjudicated without interpreting the CBA.

r. Although the Complaint omits the fact that Plaintiffs' employment with Defendants was at all times governed by either the Local 6 or Local 70 CBA, "[p]laintiffs may not avoid removal by artfully pleading their claims to omit references to preemptive federal law." See Lippitt v. Raymond James Fin. Servs., Inc., 340 F.3d 1033, 1041 (9th Cir. 2003), Hyles v. Mensing, 849 F.2d 1213, 1215 (9th Cir. 1988); Young v. Anthony's Fish Grottos, Inc., 830 F.2d 993, 997 (9th Cir. 1987) (state law claim was preempted even though complaint made no mention of collective bargaining agreement); Pantazis v. Fior D'Italia, Inc., 1994 WL 519469 at * 5 (N.D. Cal. Sept. 20, 1994)

("no independent [employment] agreement can exist where the subject matter of that agreement involves a job covered by a collective bargaining agreement"). Additionally, the Court may properly look to the facts stated in the Notice of Removal "to clarify the action a plaintiff presents and to determine if it encompasses an action within federal jurisdiction." Schroeder v. Trans World Airlines, Inc., 702 F.2d 189, 191 (9th Cir. 1983), partially overruled on other grounds by Moore-Thomas v. Alaska Airlines, Inc., 553 F.3d 1241, 1246 (9th Cir. 2009). Here, some Plaintiffs expressly invoke the CBA in the Complaint, while others ignore its existence and force.

s.  Plaintiffs Manrique, Perry, Mariani, Hitchcock, Martin and Ingram assert claims under the Family and Medical Leave Act, 29 U.S.C. §§2615(a)(1), 2615(a)(2), and 2615(b) (Manrique only). Because these claims are brought under a federal statute they raise a federal question as such, this Court may assert jurisdiction over the First, Second and Third Causes of Action.

t.  Plaintiff Manrique assets that he was subjected to random drug testing as a form of retaliation. This claim is not only preempted by Section 301 of the LMRA, but is covered by Department of Transportation Regulations 49 C.F.R. Part 40, which regulates drug testing of qualified drivers. Thus, because this claim is brought under a federal statute it raises a federal question as such, this Court may assert jurisdiction over the claim.

**Supplemental Jurisdiction**: To the extent there are some claims alleged in the Complaint that do not raise federal questions (and/or are not preempted by Section 301 of the LMRA), such claims are removable under 28 U.S.C. § 1441(c) and, pursuant to this Court's supplemental jurisdiction, under 28 U.S.C. § 1367. This Court has jurisdiction over such state law claims pursuant to the doctrine of supplemental jurisdiction under 28 U.S.C. §1367(a), because they are so related to the federal claims as to form part of the same case or controversy under Article III of the U.S. Constitution.

**Joinder**: There are no other parties who need to join in this Notice of Removal. The Court may disregard fictitious "Doe" defendants on removal.

D.  **NOTICE TO PLAINTIFFS AND THE STATE COURT**

Contemporaneously with the filing of this Notice of Removal in the United States District Court for the Northern District of California, written notice of the removal will be served upon counsel for Plaintiffs and a copy of this Notice of Removal will be filed with the Clerk of the Superior Court of California, County of Alameda, as required by 28 U.S.C. § 1446(d).

Dated: March 28, 2013

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____
RON J. HOLLAND
MORGAN P. FORSEY

Attorneys for Defendants
WASTE MANAGEMENT NATIONAL
SERVICES, INC., WASTE MANAGEMENT
OF CALIFORNIA, INC., and
WASTE MANAGEMENT OF ALAMEDA
COUNTY, INC.